UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| TERRI G. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-59 |
| | ) | |
| ANTHONY COPELAND, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and N.D. L.R. 56-1 [DE 62] filed by the plaintiff, Terri G. Martin, on December 21, 2018, and the Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and N.D. L.R. 56-1 [DE 65] filed by the defendants, Anthony Copeland, Tom Dabertin, Sandra Favella, Gerri C. Browning, and the City of East Chicago, Indiana, on December 21, 2018. For the following reasons, the Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and N.D. L.R. 56-1 [DE 62] is **GRANTED in PART and DENIED in PART,** and the Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and N.D. L.R. 56-1 [DE 65] is **GRANTED in PART and DENIED in PART.**

*Background*

The plaintiff, Terri G. Martin, filed her Complaint against the individual defendants, Anthony Copeland, Tom Dabertin, Sandra Favella, and Gerri C. Martin, and against the City of East Chicago for damages on February 16, 2016. Martin alleged multiple claims. First, she alleged that the defendants were liable under 42 U.S.C. § 1983 for violating her due process rights under the Fourteenth Amendment. She claimed that the defendants terminated her

employment without providing her a pre-termination hearing, pursuant to an alleged employment contract she had with the City of East Chicago Board of Health. Martin also alleged that her termination was motivated by political considerations in violation of the First Amendment. Additionally, she claimed that she was confined and intimidated in her office when presented the termination letter. Martin also asserted that the defendants tortiously interfered with her alleged contractual property rights in violation of the Fourteenth Amendment. Finally, Martin claimed that the defendants' conduct amounted to defamation.

Shortly thereafter, the defendants filed motions to dismiss on March 31, 2016. The court on January 17, 2017, issued an Opinion and Order dismissing Martin's defamation and tortious inference claims, as well as the official capacity claims against the individual defendants. The court also dismissed Martin's confinement and intimidation claims against Mayor Copeland and Dr. Browning. Thus, the remaining claims include: the § 1983 due process claim under the Fourteenth Amendment; individual capacity claims against Mayor Copeland, Dabertin, Favella, and Dr. Browning; the First Amendment claim; and the confinement and intimidation claims against Favella and Dabertin under the Fourth Amendment and Indiana state law.

Martin began working for the City of East Chicago Health Department in June of 2013. Dr. Browning hired Martin as the Executive Director after the previous Director resigned. As the Executive Director, she managed the day-to-day operations of the City's Health Department, wrote grants to secure funding for programs at the department, served as the liason with the Indiana State Department of Health, and represented the City as a department head in collaboration with other department heads throughout the City. Martin was under an independent contractor contract with a term of June of 2013 through December of 2013. The

contract contained a provision that the Board could renew the contract period for January 1, 2014 through December 31, 2014, which it did.

The Health Board held a meeting on November 5, 2014. Dr. Browning requested that Martin's employment contract be extended for more than one year. At the meeting, it was suggested by Deborah Mabra, a Board member, to extend Martin's contract to a three-year term. The motion was seconded and approved. The 2014 Employment Contract had not yet been drafted at the time of the meeting, and therefore was not presented to the Health Board at the November 5, 2014 meeting for approval. David Weigle, an attorney for the City, drew up the contract after the November 5 meeting. The contract covered Martin's employment for the term of January 1, 2015 through December 31, 2017. It contained a provision that Martin could be removed from her position "for cause" only after a hearing by the Board. It was signed by Martin, Dr. Browning, and four members of the Health Board on December 17, 2014.

Cody Williams and Efrem Simmons, who worked in the Animal Control Division of the City's Health Department, were responsible for feeding and cleaning the dogs under the control of the department over the Labor Day weekend in 2015. Martin became aware that neither Williams nor Simmons had taken care of the dogs. In September of 2015, the employees of the Health Department had a regularly scheduled meeting. At the meeting, Dr. Browning inquired about the situation with the Animal Control Division. Williams explained that it was the part-time employees' responsibility to feed and clean the dogs over the Labor Day weekend, but they had failed to show up. Dr. Browning, Williams, and Martin discussed the situation, and Martin issued Williams a write up.

After the meeting adjourned, Williams asked to speak with Dr. Browning, and they stepped in to the copier room to talk. Arnita Fowlkes, a manager for the Health Department,

indicated that she overheard Martin, who was visibly upset, say "he's gonna bring the nigger out of me" and called Williams a "bitch-ass nigger." Simmons indicated that he overheard Martin's remarks, as well. Martin has denied saying anything. Fowlkes advised Dr. Browning of the incident, and Williams became aware of the remarks and advised Favella.

Based on the alleged remarks made by Martin, an investigation was commenced by the East Chicago Human Resources Department. The investigation was run by Favella, who was the interim director of the Human Resources Department at the time of the incident, and Dabertin, who was an HR consultant for the City. After Favella and Dabertin had interviewed all the witnesses, they indicated to Dr. Browning that Martin had used racial slurs against Williams and recommended that her employment be terminated. Dr. Browning agreed. Dabertin, at Dr. Browning's request, prepared the termination letter and delivered it to Dr. Browning for his review and signature. Dr. Browning approved and signed the termination letter on October 13, 2015. Favella and Dabertin delivered the termination letter to Martin at her office. Her termination was effective immediately.

Martin was terminated for violating the discriminatory conduct and discriminatory harassment policies, a Category IV type of misconduct under the City's Employee Handbook. Employees that commit a Category IV type violation are subjected to immediate suspension without pay for five days pending review of termination by the Mayor. However, Martin neither was suspended nor did Mayor Copeland review her termination. The City contends that it had the right to depart from the disciplinary guidelines including immediate termination, if necessary, to protect the well-being of the City or its employees.

Martin has argued that she had a property interest in her continued employment with the City. She asserts that pursuant to the 2014 Employment Contract that was signed on December

4

17, 2014, she could be removed as the Executive Director only for cause after a hearing by the Health Board.  However, the termination letter delivered by Dabertin and Favella terminated her employment with the City effective immediately.  A pre-termination hearing before the Board never occurred.  Thus, it is her contention that the defendants violated her due process rights.  She also has argued that each defendant, Dr. Browning, Dabertin, Favella, and Mayor Copeland, are personally liable for violating her constitutional rights.

Martin has filed a motion seeking summary judgment against the City and the individual defendants on the 42 U.S.C. § 1983 due process claim, only.  The defendants filed a response in opposition on January 31, 2019, and Martin filed a reply on February 28, 2019.  The defendants also have filed a motion for summary judgment seeking judgment against Martin on the 42 U.S.C. § 1983 due process claim, the First Amendment claim, the intimidation and confinement claims, and the individual liability claim against Mayor Copeland.  Martin objected to the defendant's motion on January 30, 2019, and the defendants filed a reply on February 28, 2019.

*Discussion*

Pursuant to **Federal Rule of Civil Procedure 56(a),** summary judgment is proper only if it is demonstrated that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  A fact is material if it is outcome determinative under applicable law.  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142,

155 (1970); *Stephens*, 569 F.3d at 786.  When the movant has met its burden, the opposing party cannot rely solely on the allegations in their pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor."  *Marr v. Bank of America, N.A.,* 662 F.3d 963, 966 (7th Cir. 2011); *see also* ***Steen v. Myers,*** 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")).  The non-moving party cannot rely on conclusory allegations. *Smith v. Shawnee Library System,* 60 F.3d 317, 320 (7th Cir. 1995).  Failure to prove an essential element of the alleged activity will render other facts immaterial.  *Celotex,* 477 U.S. at 323; *Filippo v. Lee Publications, Inc.,* 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing a genuine issue for trial.").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 212 (1986); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014).  In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.  *Anderson,* 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

The fact that cross-motions for summary judgment are pending does not alter the standard.  When evaluating each side's motion, the court simply "construe[s] all inferences in

favor of the party against whom the motion under consideration is made." **Metro. Life Ins. Co. v. Johnson**, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting **Hendricks-Robinson v. Excel Corp.**, 154 F.3d 685, 692 (7th Cir. 1998)).

Martin has alleged that the defendants violated her due process rights under the Fourteenth Amendment when she was discharged without a pre-termination hearing. The Fourteenth Amendment forbids state and local governments from depriving "any person of life, liberty, or property, without due process of law." **U.S. Const. amend. XIV, § 1.** "[T]he threshold question in any due process challenge is whether a protected property or liberty interest actually exists." **Citizens Health Corp. v. Sebelius**, 725 F.3d 687, 694 (7th Cir. 2013). A protected property interest is a legitimate claim of entitlement, not defined by the Constitution, but "by existing rules or understandings that stem from an independent source such as state law." **Board of Regents of State Colleges v. Roth**, 408 U.S. 564, 577 (1972). In other words, "'where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement.'" **Chicago United Indus., Ltd. v. City of Chicago**, 669 F.3d 847, 851 (7th Cir. 2012) (internal citation omitted).

To establish a claim for a due process violation, Martin must demonstrate: (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. **Manistee Apartments, LLC v. City of Chicago,** 844 F.3d 630, 633 (7th Cir. 2016). The court first must determine whether Martin has produced evidence showing that she possessed a property interest in her job that was protected by the Constitution. **Johnson v. City of Fort Wayne, Ind.**, 91 F.3d 922, 943 (7th Cir. 1996). If the answer to this question is affirmative, then the court must decide what process was due before she could be deprived of

that interest. *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994) (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)).

Martin asserts that she had a cognizable property interest in her continued employment which was derived from the 2014 Employment Contract. The contract included a fixed term of employment for three years from January 1, 2015 to December 31, 2017. Additionally, Martin asserts that at the November 5, 2014 Health Board meeting a motion was made to extend her employment to a three year term. The minutes from November 5, 2014 meeting reflect that the motion was made by Deborah Mabra, Diane Perez seconded the motion, and the motion carried.

The defendants contend that the 2014 Employment Contract was void because it never was formally approved by the Health Board in an open meeting in accordance with the Indiana Open Door Law. The defendants claim that because the Health Board did not review the contract before the November 4, 2015 meeting, Martin did not have a protected property interest in continued employment with the City and was an at-will employee in accordance with the City's Employee Handbook when she was terminated. Therefore, she was not entitled to a pre-termination hearing. There is no dispute that the contract was drafted after the November 5, 2014 meeting by Attorney Weigle.

The purpose of the Indiana Open Door Law is for "official action of public agencies [to] be conducted and taken openly unless otherwise expressly provided by statute, in order that the people may be fully informed." **Ind. Code § 5-14-1.5-1.** An "official action" means to receive information, deliberate, make recommendations, establish policy, make decisions, or take final action. **Ind. Code § 5-14-1.5-2.** A violation of this policy occurs when a public agency "participate[s] in a series of at least two (2) gatherings of members of the governing body" and

8

all of the following are met: "one (1) of the gatherings is attended by at least three (3) members but less than a quorum of the members of the governing body…," "the sum of the number of different members of the governing body attending any of the gatherings at least equals a quorum of the governing body," "all the gatherings concern the same subject matter and are held within a period of not more than seven (7) consecutive days," and "the gatherings are held to take office action on public business." **Ind. Code § 5-14-1.5-3.1**. While the defendants allege that pursuant to Indiana's Open Door Law, the 2014 Employment Contract had to be in existence and approved at the November 5, 2014 meeting in order to be valid, Indiana's Open Door Law is silent on this issue. Additionally, the defendants fail to cite any case authority to support this proposition.

At the meeting, Dr. Browning suggested that Martin's employment be extended for more than one year. Dr. Browning, as the City's health officer, may appoint and employ the professional, clerical, and other employees who are necessary and reasonable to carry out and perform the duties of the department. **Ind. Code § 16-20-4-21.** Additionally, the Board of each city's health department must confirm the appointment of professional employees who are appointed by the health officers and who meet the qualification requirements of the local board for the respective professional employee positions. **Ind. Code § 16-20-4-23.** At the meeting, a motion to extend Martin's contract to a three year term was made, seconded, and passed in compliance with the "final action" requirement defined as "a vote by the governing body on any motion. . ." **Ind. Code § 5–14–1.5–2(g).**

To determine whether Martin had a substantive property interest in her job is a question of state law. "Historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment at-will. If there is an

9

employment contract for a definite term, and the employer has not reserved the right to terminate the employment before the conclusion of the contract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement. If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party."
***Orr v. Westminster Village North, Inc.,*** 689 N.E.2d 712, 717 (Ind. 1997).

After the action taken by the Health Board at the November 5, 2014 meeting, Attorney Weigle prepared Martin's written contract. The contract was dated December 17, 2014 and contained the signatures of Diane Perez, Deborah Mabra, Loretta Parker, Dr. Matt Liberan, and Dr. Browning. There is no dispute that the December 17, 2014 Employment Contract between Martin and the City contained an "ascertainable term of employment," specifically, "for a three (3) year period beginning January 1, 2015 through December 31, 2017." [Exhibit 7]. Additionally, the alleged contract was fully performed up until the date of Martin's termination, including her receiving the salary as set forth in the contract. (Martin Dep. 152). The aforementioned actions taken by both parties amounts to a validly formed contract, which was effectuated on December 17, 2014.

However, the defendants have argued that even if the 2014 Employment Contract was valid, circumstances surrounding Martin's termination bypassed their contractual obligation to hold a pre-termination hearing. The defendants have based this argument on the Supreme Court's decision, in ***Gilbert v. Homar***, 520 U.S. 924 (1997), that there are some circumstances where failing to provide a pre-termination hearing of a public employee would not amount to a due process violation. Specifically, the Supreme Court upheld a police department's decision to suspend one of its officers without a suspension hearing where that officer had been charged

with possession of marijuana, possession with intent to deliver, and conspiracy to violate the controlled substance law. *Homar*, 520 U.S. at 926. The officer later was able to tell his side of the story before being demoted to a groundskeeper. *Homar*, 520 U.S. at 926. The Supreme Court found that "the State ha[d] a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Homar*, 520 U.S. at 932.

The facts in *Homar* simply are not comparable to this case. While being a public employee, Martin's position did not equate to that of a police officer, and further Martin had not been charged with any crime. Additionally, Martin was not suspended. If the defendants had felt that Martin's alleged use of discriminatory language towards another employee created a need for her immediate termination, they would not have waited over a month to terminate her. Consequently, it was feasible for the defendants to hold a pre-termination hearing prior to October 13, 2015. *See* ***Bradley v. Village of University Park, Illinois***, 2019 WL 3121844, at *4 (7th Cir. 2019) (*citing* ***Zinermon v. Burch***, 494 U.S. 113, 132 (1990) (explaining "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking").

An employment contract between Martin and the City was validly formed on December 17, 2014 entitling Martin to a property interest in her continued employment with the City. The contract provided, among other things, that Martin was to be removed from her position as Executive Director of the City's Health Department only for cause, which included a pre-termination hearing. Accordingly, when the City failed to honor the terms of Martin's employment contract and terminated her without a prior hearing, her rights to due process under

11

the Fourteenth Amendment were violated.  Martin is entitled to judgment on her § 1983 claim under the Fourteenth Amendment.

Martin has sued Dr. Browning, Dabertin, Favella, and Mayor Copeland individually under 42 U.S.C. § 1983 for violating her constitutional rights.  There is no dispute that Dr. Browning, Chief Health Officer, Mayor Copeland, Mayor of East Chicago, Dabertin, HR consultant for the City, and Favella, Director of HR for the City were all state actors.  "[S]tate employment is generally sufficient to render the defendant a state actor." **West v. Atkins**, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988) (internal quotations and citations omitted).  However, Martin must show that the individual defendants, acting under color of state law, deprived her of a right secured by the Constitution or laws of the United States." **Estate of Sims ex rel. Sims v. Cty. of Bureau**, 506 F.3d 509, 514 (7th Cir. 2007).  An individual cannot be held liable in a § 1983 action unless he or she has caused or participated in the alleged constitutional deprivation.  **Colbert v. City of Chicago**, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (*citing* **Wolf-Lillie v. Sonquist,** 699 F.2d 864, 869 (7th Cir. 1983)).

The defendants have dedicated one paragraph in a footnote to the doctrine of qualified immunity.  "Arguments not developed in any meaningful way are waived." **Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.,** 181 F.3d 799, 808 (7th Cir. 1999). Accordingly, the defendants have waived the argument of qualified immunity for lack of development.

First, Martin has argued that Dr. Browning is personally liable under § 1983.  Dr. Browning signed the letter terminating Martin, effective immediately.  He testified that he did not consider the employment contract when he signed the letter of termination.  [Browning Dep. 58].  However, he has acknowledged that he was aware of the provision in the contract entitling

Martin to a hearing before the Board prior to her being removed from her position. [Browning Dep. 57]. Despite being aware that Martin's contract required a pre-termination hearing, Dr. Browning signed the letter terminating Martin effective immediately without the benefit of a hearing, with reckless disregard for her constitutional rights. Martin is entitled to judgment against Dr. Browning in his individual capacity.

Next, Martin has argued that Dabertin and Favella also are personally liable under § 1983. Dabertin and Favella conducted the investigation of Martin's alleged use of vile, obscene, and discriminatory language that resulted in her termination. Martin has argued that the investigation lacked neutrality. She asserts that the lack of neutrality, standing alone, is sufficient to find that Dabertin and Favella deprived her of due process. Martin contends that Favella testified, while discussing that Martin had not been given anything in writing concerning her alleged infraction during the investigation and prior to the termination letter, that "[i]t was Tom and myself. We did it in collaboration in *our investigation to terminate* Martin's employment." [Favella Dep. 65]. Martin contends that the above statement clearly indicates that the decision to recommend termination of her employment preceded the investigation.

In conducting the investigation, Dabertin and Favella interviewed Martin, Williams, Simmons, Fowlkes, and Dr. Browning. Simmons and Fowlkes, who were the only individuals in the area when Martin made the alleged remarks, testified that they heard Martin use racial slurs against Williams. [Fowlkes Dep. 18, Simmons Dep. 6]. Thus, Dabertin and Favella concluded that Martin used derogatory remarks and recommended to Dr. Browning that Martin be terminated. A termination letter was prepared, signed by Dr. Browning, and hand delivered to Martin by Dabertin and Favella. However, of the defendants, it was Dr. Browning who made the decision to terminate Martin's employment without notice and an opportunity to be heard.

13

Martin has not produced any evidence that the investigation lacked neutrality. Additionally, Dabertin and Favella did not cause the constitutional deprivation because it was Dr. Browning's decision to discharge Martin.

Next, Martin asserts that Mayor Copeland's deliberate and reckless disregard of her constitutional rights imposes liability on him individually. The defendants concluded that Martin committed a "Category IV infraction," which ultimately resulted in her October 13, 2015 termination. Martin, however, has asserted that Mayor Copeland disregarded her constitutional rights by failing to adhere to the proper disciplinary procedures for a Category IV infraction, as set out in East Chicago's personnel policy. The policy states that behavior amounting to a Category IV infraction "will result in an immediate suspension without pay for five days pending review by the Mayor." [Exhibit D]. Martin has argued that she was not suspended for five days, nor did Mayor Copeland review the termination decision. By asserting an argument of liability for Mayor Copeland based solely on the City's personnel policy, Martin has abandoned her argument that her due process rights were derived from the 2014 Employment Contract. It is also worth noting that Martin, herself, has indicated that reliance on the City's "handbook" is only for matters concerning at-will employees and is not an appropriate source of law when handling employees with an ascertainable term of employment. Accordingly, the court finds Martin's argument as to Mayor Copeland's personal liability to be without merit.

The defendants also have moved for judgment on this claim arguing that Mayor Copeland was not personally involved in depriving Martin of her constitutional rights. The defendants assert that Mayor Copeland did not have any involvement in Martin's termination. He was advised of the ongoing investigation involving Martin, and at the conclusion of the investigation, the recommendation by Dabertin and Favella to discharge Martin. However, he

14

did not assist in the preparation of her termination letter nor was he present for her termination. Rather, Mayor Copeland relied on the City's HR department to make the hiring and firing decision. The violation of Martin's constitutional rights did not occur with Mayor Copeland's knowledge or consent. Furthermore, there is no evidence that Mayor Copeland was personally involved in the deprivation of Martin's constitutional rights or that he acted with a reckless disregard of those rights. Accordingly, Mayor Copeland, is not personally liable under § 1983 and judgment should be entered in his favor.

The defendants have moved for summary judgment on Martin's First Amendment claim and her intimidation and confinement claims under the Fourth Amendment and Indiana state law against Dabertin and Favella. Martin chose not to address these claims in her response, and therefore has waived any arguments in opposition. When a party fails to address an argument in a summary judgment briefing, that is deemed a waiver. ***Cruse v. Hook-Superx, Inc.,*** 561 F. Supp. 2d 993, 1001 (N.D. Ind. 2008); *see* ***Roe–Midgett v. CC Servs., Inc.,*** 512 F.3d 865, 876 (7th Cir. 2008). Although Martin has waived her arguments, the facts cited by the defendants warrant summary judgment on these claims. The defendants have shown that Martin was terminated for a non-political reason. Additionally, Martin's intimidation and confinement claims lack evidentiary support. Accordingly, the defendants are entitled to judgment on Martin's First Amendment claim, as well as her confinement and intimidation claims made under the Fourth Amendment and Indiana state law.

Based on the foregoing reasons, the Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and N.D. L.R. 56-1 [DE 62] is **GRANTED in part** as to the due process claim under the Fourteenth Amendment against the City of East Chicago and the § 1983 individual capacity claim against Dr. Gerri Browning and **DENIED in part** as to the § 1983

15

individual capacity claim against Tom Dabertin, the § 1983 individual capacity claim against Sandra Favella, and the § 1983 individual capacity claim against Mayor Anthony Copeland, and the Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and N.D. L.R. 56-1 [DE 65] is **GRANTED in PART** as to the First Amendment claim, the confinement and intimidation claims against Tom Dabertin and Sandra Favella, and the § 1983 individual capacity claim against Mayor Anthony Copeland and **DENIED in PART** as to the due process claim under the Fourteenth Amendment. The defendant, Anthony Copeland, is **DISMISSED** from this matter.

The question of damages and the § 1983 individual liability claims against the defendants, Tom Dabertin and Sandra Favella, still remain.

ENTERED this 19th day of August, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge